SABIN v. BARNETT et al.

(Circuit Court, D. Washington, W. D. March 10, 1897.)

1. SHERIFF'S BONDS—DEFAULTS OCCURRING BEFORE EXECUTION.
    It seems that, under the Washington statutes, the sureties on a sheriff's bond assume responsibility for all the sheriff's official acts, and are liable for defaults occurring before the execution of the bond.

2. SAME—DUTIES AS TO WRITS OF EXECUTION.
    Under 2 Hill's Code Wash. § 496, where a sheriff has received money upon a sale of attached property before judgment he must pay the money to the clerk forthwith, after receiving the writ of execution upon the judgment, but there must be an actual writ; and he is not in default, or liable upon his bond, for failure to pay the money over upon a simple order directing him to pay the money into court.

Wirt Minor and W. C. Sharpstein, for plaintiff.

Bogle & Richardson, Edward F. Hunter, and C. H. Forney, for defendants.

HANFORD, District Judge (orally). This is an action by R. L. Sabin against John W. Barnett and others upon an official bond given by Barnett as sheriff of Lewis county. The other defendants are sued as his sureties. The amended complaint, after alleging the election of Barnett to the office of sheriff, and the execution by him and his sureties of two separate official bonds, upon which the suit is founded, alleges as a cause of action that on the 8th day of February, 1893, the plaintiff in this case commenced an action for the recovery of money in the superior court of the state of Washington, for Lewis county, against one Richardson, and in that action there was a writ of attachment issued, which the defendant Barnett, as sheriff, levied upon certain goods, wares, and merchandise, as the property of Richardson; that afterwards, on the 17th day of May, 1893, the plaintiff obtained a judgment in that

action for the sum of $2,015.50, together with costs and interest; that on the 19th of April, 1893, an order was made in that action by the superior court of Lewis county that the attached property be sold by the sheriff, and that pursuant to that order the sheriff did sell the property, receiving therefor the sum of $4,500; that afterwards, in August, 1894, after notice to show cause, the superior court of Lewis county made an order directing the sheriff to pay into court the amount of money required to satisfy the judgment; that the sheriff was present when the order was made, and had knowledge of the making of the order, and consented to it. The amended complaint then charges that the sheriff did not retain the money obtained by the sale of property to answer the judgment, and that he did not apply the money to the satisfaction of the judgment, but that he converted the money to his own use, and never paid any part of the money received by him upon said judgment, and that the judgment remains wholly unpaid. That is the substantial part of the case, as set forth in the amended complaint. To this amended complaint the defendants have interposed a demurrer. As I understand it, all the defendants demur upon the ground that the facts stated in the complaint do not amount to a legal default on the part of the sheriff; that he has not made default, because the time has never come when he was legally required to pay over the money. And, in behalf of some of the sureties, another ground of demurrer is urged, that they became sureties upon the official bond after the default had actually occurred, and that they, as sureties, cannot be held for this alleged default on the part of the sheriff. I will not say anything further in regard to this second ground of demurrer than this: That it is my opinion that, under the provisions of the law in force at the time of executing the bond, the sureties voluntarily assumed responsibility for all the sheriff's official acts, and I will overrule the demurrer on that ground. But I think the demurrer must be sustained upon the first ground, because it is my opinion that the plaintiff has failed to take such proceedings as to require the sheriff to pay the money; that the action has been commenced prematurely, before the time had ever come around when the sheriff was obliged legally to pay over the money. There are several provisions of the Code in force at the time of these proceedings which are necessary to be referred to in order to determine what the duties of the sheriff were, and which, in my opinion, are prerequisite to a liability on his official bond. Section 303 of 2 Hill's Code provides for a sale of property held under attachment, to be made under an order of the court. Section 304 prescribes that money received from the sale of property held under an attachment, and sold by order of court, shall be retained by the sheriff to answer any judgment that may be recovered in the action. This section makes the sheriff the legal custodian of the money, up to a certain time, and for a certain purpose. Now, that purpose is to apply the money to satisfy a judgment. Section 464 prescribes how a judgment is to be enforced. The first part of the section is all that it is necessary to read. It provides:

"That the party in whose favor judgment has been given, or may hereafter be given or entered in any court of record in this state or the territory of Washington, may have an execution issued at any time for the collection or enforcement of the same."

Now, that describes the manner in which a judgment is to be enforced. It is by an execution, and the other sections I am going to refer to show that that means a writ, and that there can be no substitute for the process that is contemplated by this statute for enforcing a judgment. Section 465 prescribes that there shall be four kinds of executions. Section 466 prescribes which one of the four kinds of judgments shall be issued to enforce a money judgment.

It has been said in argument that the law does not prescribe any form for an execution, but counsel is in error about that, because section 467 provides:

"The writ of execution shall be issued in the name of the state of Washington, sealed with the seal of the court, and subscribed by the clerk, and shall be directed to the sheriff of the county in which the property is situated, or coroner when the sheriff is a party or interested, and shall intelligibly refer to the judgment, stating the court, the county where judgment was rendered, the names of the parties, the amount of the judgment if it be for money, and the amount actually due thereon, and shall require substantially as follows: If it be against the property of the judgment debtor it shall require the sheriff to satisfy the judgment with interest, out of the personal property of the debtor, and if sufficient personal property cannot be found out of his real property upon which the judgment is a lien."

The other provisions it is not necessary to read.

Section 469 prescribes the duty of the sheriff upon receiving the writ, and provides:

"The sheriff shall endorse upon the writ or execution, the time when he received the same, and such execution shall be returnable within sixty days after its date to the clerk who issued the same; and no sheriff shall retain any money collected on execution more than twenty days before paying the same to the clerk of the court who issues the writ under penalty of twenty per cent. on the amount collected to be paid by the sheriff, the one half to the county commissioners of the county wherein the action was brought for the use of the school fund of said county."

Now, that is the section that fixes the time when the sheriff may become in default for nonpayment of money, which is 20 days after he has collected the money upon the execution, and until that time he cannot be charged as a defaulter, because he is authorized to hold the custody of the money that length of time, providing that the time does not run over the return day of the writ, which is 60 days after it is issued; and he is not required to pay money to satisfy a judgment, because that is not his province. It does not come within the scope of his official duties to apply the money to pay a judgment by paying it to the party in whose favor the judgment is recovered. That is the duty of the clerk, and it is provided for in the latter part of this same section (469), which requires the clerk to apply the money in satisfaction of the judgment. The sheriff has no right to make any other disposition of money recovered upon execution, except to pay it into the hands of the clerk. That is the only way he can clear himself from liability. Now, there is another section that is specific in its

application to money received upon a sale of attached property before judgment. It is section 496 of the Code, and it provides:

"When the writ of execution is against the property of the judgment debtor it shall be executed by the sheriff as follows: If property has been attached he shall endorse on the execution and pay to the clerk forthwith the amount of the proceeds of sales of perishable property or debts due the defendant received by him sufficient to satisfy the judgment."

The word "forthwith" would perhaps make a different rule as to the time the sheriff might retain the money. Instead of retaining it 20 days, he would be required, under that section, I take it, to pay the money forthwith. But "forthwith" means after he has received the writ, and there must be an actual writ. It has been said in argument that a writ of execution would be unnecessary; that there would be no function for the writ to perform in a case where the sheriff had the money in his hands sufficient to satisfy the judgment; that a simple order of the court, directing him to pay the money into court, would take the place of an actual writ. But it will be observed, in the different sections that I have referred to of the Code, that the law specifically provides that an actual writ shall issue, and prescribes that the sheriff shall perform certain duties with reference to that writ; and the object of it is to maintain orderly proceedings, and to have a record kept. The orderly way to enforce a judgment is to have process of the court issued, and to have it delivered into the hands of the officer authorized by law to execute it, and for him to make certain indorsements upon that writ and return it. He is required to indorse the time he receives the writ, and his proceedings under it. There is no way that a sheriff could protect himself or his sureties upon his official bond for the proper application of money that comes into his official custody, except by executing legal process in the manner prescribed by law. He must conform to the requirements of the law as to the manner of executing the writ, and make the proper return upon the writ; and, if he does that, he is clear of liability, and, unless he does it, he is not clear. Now, in this case this amended complaint fails to show that any execution was ever issued, or anything equivalent, or that could take the place of an execution. The most that is claimed is that there was an order of court made, and that the sheriff had knowledge of it and consented to it; but, even if that order of court could be deemed a writ, it would have to be put in form so it could be treated as a writ; and indorsements made upon it. A certified copy, with the seal of the court and signature of the clerk, would be necessary to make it a writ upon which the sheriff could be required to act, and upon which he could make his return. As that writ has not been issued, and as the time has never yet come when the sheriff could be called upon to apply the money upon the writ, there has been no default, in my opinion, which subjects him and his sureties to liability in this suit. The demurrer is sustained and exceptions are allowed.