FINN v. BOARD OF SUPERVISORS OF BAY COUNTY.

1. MUNICIPAL CORPORATIONS—BONDS—CONTRACTS.
    An unconditional, unambiguous agreement in writing to take bonds of a municipal corporation for a price named is not subject to the approval by the purchaser's attorney of the legality of such bond issue.

2. SAME—CUSTOMS AND USAGES—EVIDENCE.
    Testimony that a custom prevails among bond buyers to require the certificate of their validity by an attorney of recognized standing is not admissible to contradict the terms of a contract to buy the issue.

3. SAME — CONSTITUTIONAL LAW — COUNTIES — SEGREGATION OF TOWNSHIPS.
    The bonds were not affected by a local act of the legislature segregating a township from Bay county which issued the bonds and making the same part of Arenac county.

4. CONSTITUTIONAL LAW — BONDS — MUNICIPAL CORPORATIONS — COUNTIES—CHANGE OF BOUNDARIES.
    After the authorization by proper municipal action of a bond issue, and after the execution of a contract to sell the bonds to plaintiffs, it was not within the power of the legislature to pass any act relieving any portion of the territory affected by such proposed issue from the burden of the securities: the fact that they had not been issued is immaterial.

5. MUNICIPAL CORPORATIONS—CONTRACTS—BREACH.

The fact that plaintiffs' attorney refused to approve the bond issue was no defense to the claim of the county for breach of plaintiffs' contract to accept the bond issue, and defendant was entitled to a directed verdict for its damages in recoupment.

Error to Genesee; Wisner, J. Submitted June 19, 1911. (Docket No. 95.) Decided October 2, 1911.

Assumpsit by Matthew Finn and Alfred J. Ducharme, copartners as Finn & Ducharme, against the board of supervisors of Bay county to recover the deposit of a certified check in the hands of defendant county. A judgment for plaintiffs on a verdict directed by the court is reviewed by defendant on writ of error. Reversed.

*Charles W. Hitchcock (Lee E. Joslyn,* of counsel), for appellant.

*Geer, Williams & Halpin,* for appellees.

BROOKE, J. In this action plaintiffs seek to recover the proceeds of a certified check for $2,500, delivered by them to defendant with their bid for the purchase of $135,000 of bonds, which defendant offered for sale by advertisement. Defendant pleaded the general issue and claimed the right to retain the check as stipulated damages, and also to recover its actual damages because of the failure of plaintiffs to carry out their contract and accept and pay for the bonds awarded to them. It was conceded that, upon a resale of the bonds, Bay county lost the sum of $136.74 in addition to the amount of the check, for which sum it asked judgment.

The proposal for sale of the bonds in question was as follows:

### "Proposals for Bonds.

"BAY CITY, MICH., February 2, 1903.

"Pursuant to the following resolutions, the clerk of the county of Bay will receive bids up till 10 o'clock a. m.

Thursday, February 12, 1903, for one hundred and thirty-five thousand dollars ($135,000.00) refunding stone road and bridge bonds.

"Supervisor Moore moved the adoption of the following resolution.

"By Supervisor Moore:

"Whereas, the legislature of the State of Michigan has by a special act authorized and empowered the board of supervisors of the county of Bay to refund sixty thousand dollars of stone road bonds, which were due and payable July 1, 1902; fifteen thousand dollars of Twenty-Third St. bridge bonds, which are due and payable March 10, 1903, and sixty thousand dollars of Third St. bridge bonds, which are due and payable October 1, 1903, and to issue the bonds of the county therefor: Therefore be it:

"Resolved, that the officers of this county, as hereafter provided, be and they are hereby authorized and directed to carry out and complete the work necessary to obtain the money on said bonds by selling them to the highest responsible bidders and pay over the money received therefor into the treasury of this county to be used for the purposes for which the loan is made. Said bonds to be issued as follows: Thirty thousand dollars stone road refunding bonds to be dated March 10, 1903, and to become due and payable March 10, 1923; thirty thousand dollars stone road refunding bonds to be dated March 10, 1903, and to become due and payable March 10, 1933; fifteen thousand dollars Twenty-Third street bridge bonds to be dated March 10, 1903, and to become due and payable March 10, 1928; thirty thousand dollars Third street bridge bonds to be dated October 1, 1903, and to become due and payable October 1, 1925, and thirty thousand dollars Third street bridge bonds to be dated October 1, 1903, to become due and payable October 1, 1930. Said bonds shall bear interest at the rate of four (4) per cent. per annum, payable semi-annually, principal and interest payable in New York City, bonds to be issued in denominations of one thousand dollars ($1,000.00) each. And be it further

"Resolved, that the clerk of this county advertise for proposals for the purchase of said bonds and report the bids unopened to the ways and means committee of this board on February 12, 1903, at which time said committee shall proceed to open and examine said bids and report the same to this board with their recommendations in the

premises. Said bonds when issued shall be signed by the chairman of the board and the treasurer of the county of Bay, and countersigned by the clerk of this county. And be it further

"Resolved, that the county clerk proceed to prepare such copy of the proceedings of this board as shall be required by intending purchasers and shall submit to the party purchasing the same the proofs of the legality and regularity of said bonds.

"A yea and nay vote was demanded, the roll was called, which resulted as follows:

"Yeas: Supervisors Allen, Brissette, Coggins, Combs, Cunningham, Garrison, Grace, Hartingh, Heumann, Hewitt, Jonas, Knight, Larue, Logan, Lourim, Moeller, Moore, Orr, Pierce, Peoples, Reid, Ross, Roy, Schussler, Sullivan, Truax, Wagner, Ward, Weber, Wyrybske—30.

"Nays: None.

"Resolution thereupon declared carried.

"The county of Bay guarantees that said bonds are legally issued under authority of a special act of the legislature of the State of Michigan. Proofs of legality to be furnished the successful bidders. Bonds to be issued for one thousand dollars ($1,000) each.

"Interest will be payable semi-annually in New York City.

"The parties bidding for same must accompany bid with an unconditional certified check payable to the order of the treasurer of the county of Bay for the sum of twenty-five hundred dollars ($2,500) which the county of Bay may collect and retain the moneys thereon as liquidated damages for failure on the part of the bidder to complete the purchase should the bonds be awarded them.

"Bids to state total amount that will be paid.

"The board of supervisors reserves the right to reject any and all bids. Purchaser to furnish lithograph bonds.

"The purchaser must pay all accrued interest upon the bonds at the time of delivery.

"The population of Bay county, as established by United States census in 1900, was 62,378.

"The assessed valuation of Bay county in 1902 was:

Real estate_____$18,733,000
Personal property_____ 5,636,973
                                                        _____
For purposes of taxation, total_____$24,369,973

" Bonded indebtedness of the county :

Twenty-Third street bridge bonds, including this
   issue _____ $15,000
Third St. bridge bonds, including this issue_____  60,000
Belinda St. bridge bonds_____  60,000
Stone road bonds, including this issue_____ 160,000
State judgment bonds _____ 115,000
                                                     _____

   Total indebtedness_____ $410,000

" Corporate property owned by the county :

Courthouse and grounds_____ $50,000
Jail and grounds _____  35,000
Poor farm and appurtenances_____  12,000
Agricultural grounds_____  10,000
                                                     _____

   Total_____ $107,000

" In addition we have 100 miles of macadamized roads,
which were built at the expense of the county and are
maintained by the county.

" Bay county has never defaulted in the payment of
either principal or interest when due.

" For reference we would refer you to any of our city
banks.

                              " Birdsley Knight,
          " Chairman of Ways and Means Committee.
                              " John G. Buchanan,
                              " Clerk of Bay County."

Plaintiffs' bid was as follows :

                         " Detroit, Mich., Feb. 12, 1903.
" Birdsley Knight, Chairman of Ways and Means
          Committee, and
" John G. Buchanan, Clerk,
                    " Bay County, Michigan.
" Gentlemen:

" For the issue of $135,000 Bay county bonds, adver-
tised in the inclosed notice, we propose to pay you the
sum of $141,789.

" This bid is made with the intention of complying fully
with the inclosed advertisement.

" We inclose herewith our certified check for $2,500 as
a guaranty.

                    " Yours very truly,
                              " Finn & Ducharme.

"We also agree to take any or all of said issue of bonds on the same income basis that $6,789 premium bears to the amount of bonds that may be allotted to us.

"Finn & Ducharme."

This bid was received by defendant on February 12, 1903, and the next day the bid was accepted by the following resolution:

"*Gentlemen:*

"We have received the following bids for one hundred and thirty-five thousand dollars ($135,000.00) refunding bonds: * * *

"We would recommend that the whole issue of one hundred and thirty-five thousand dollars ($135,000) be sold to Messrs. Finn & Ducharme, of Detroit, for the sum of one hundred and forty-one thousand seven hundred and eighty-nine dollars ($141,789) and accrued interest to date of delivery, and would further recommend that the certified check for twenty-five hundred dollars ($2,500) be turned over to the county treasurer, the funds for same collected when the validity of the bonds have been passed on, and held as a guaranty for the taking up of the sixty thousand dollars to be issued October 1, 1903, and if said Finn & Ducharme fail to take up said sixty thousand dollars when issued or the seventy-five thousand dollars to be issued March 10, 1903, then the moneys collected on the said twenty-five hundred dollar check to be retained by the county of Bay as liquidated damages for their failure to carry out their agreement, and we would further recommend that the prosecuting attorney proceed at once to make a contract to carry out the above recommendations.

"Signed by all the members of the ways and means committee. * * *

"Report adopted."

On the same day (February 13th) a second resolution was adopted, as follows:

"Whereas, the board having sold the $135,000.00 of the bonds of this county to Finn & Ducharme, and contract having been entered into by this county with said firm for their purchase: Therefore be it resolved, that when the details of the issue of said bonds have been accepted by said Finn & Ducharme, the chairman and clerk of this

board and the treasurer and clerk of this county are directed to execute said bonds according to agreement."

On February 16, 1903, plaintiffs wrote to the clerk of Bay county, asking for "abstract of proceedings preliminary to the awarding of the bonds, signatures of officers, etc.," and on the same day the prosecuting attorney wrote plaintiffs that their bid had been accepted and asking them to fill out form of contract.

To this letter plaintiffs replied as follows:

"February 20, 1903.

"EDWARD E. ANNEKE, Esq.,
        "Bay City, Michigan.
"*Dear Sir:*

"Yours of the 16th to hand. We have no particular form of contract that we use in these matters. We suppose, however, that we can put the matter in the form of a communication from us and an acceptance from you which will make the matter binding. We have prepared a letter along these lines which you will find inclosed and which we think covers the agreement made with the committee. You can have them send us a communication as to our proposition. We would like to have furnished us at once a copy of the law you are bonding under, together with an abstract of proceedings had relative to issuing of the bonds, also the signatures of the county treasurer, chairman of the board of supervisors and county clerk, as we desire to have the bonds prepared at once.

"FINN & DUCHARME."

The inclosure mentioned in the foregoing letter follows:

"February 20, 1903.

"COUNTY TREASURER,
        "Bay County, Michigan.
"*Dear Sir:*

"This is to confirm our purchase of $135,000 Bay county bonds, 4 per cent. refunding bonds to be dated as follows: $30,000 dated March 10, 1903, and payable March 10, 1923; $30,000 dated March 10, 1903, payable March 10, 1933; $15,000 dated March 10, 1903, and payable March 10, 1928; $30,000 dated April 1, 1903, and payable October 1, 1925; $30,000 dated Oct. 1, 1903, and payable October 1, 1930, for which we agree to pay the sum of $141,789 with premium of $6,789. Of this premium

we are to pay a proportional amount for the $75,000 bonds dated March 10, 1903, and remainder of the premium to be paid October 1, 1903, when the $60,000 of bonds are to be issued and as a guaranty that we will take the $60,000 bonds dated October 1, 1903, at the prices herein stated, we are willing that you retain in your possession the $2,500 now in your hands, you to allow us 4 per cent. interest per annum on said sum from February 12, 1903.

"Yours very truly,
"FINN & DUCHARME."

To this letter defendant replied as follows:

"BAY CITY, February 26, 1903.
"FINN & DUCHARME,
"Detroit, Michigan.
"*Gentlemen:*

"Your favor of the 20th instant addressed to Edward E. Anneke, prosecuting attorney of the county of Bay, in reference to bond issue has been handed to me for reply. The contract that you inclose to him is correct with the exception that the clause in the bond proposal of yours that the purchaser must pay the accrued interest upon the bonds at the time of the delivery. I herewith return to you the contract sent to Mr. Anneke, asking that the accrued interest clause be added and the same returned to the county treasurer, upon receipt of which an acceptance will be immediately forwarded to you. Trusting that the letter written by the county clerk contained all the information necessary for the issue of the bonds on the part of the county, and that the bonds will be received in time, I beg to remain,

"Yours respectfully,
"BIRDSLEY KNIGHT,
"Chairman of Ways and Means Committee."

Plaintiffs then wrote the following letter:

"February 27, 1903.
"BIRDSLEY KNIGHT, Esq.,
"Bay City, Michigan.
"*Dear Sir:*

"We return herewith inclosed our letter to the county treasurer with the agreement added as to the accrued interest suggested by you. We received the abstract of proceedings and so far as I can see they comply with the law. It is customary, however, that the board adopt a

form of bond and most bond attorneys require it before approving the proceedings. We are just now taking this matter up with Mr. Mathews, of Chicago, and he agreed with us that it is not essential to the validity of the bonds that this be done. We are forwarding him today · copy of bonds prepared by us and expect his approval Monday. We think everything will be in readiness by the 10th.

"Yours very truly,<br>" Finn & Ducharme."

After submitting the proceedings to their attorney, plaintiffs received the following letter from him:

"Chicago, March 3, 1903.

"Finn & Ducharme,
    "34 Buhl Block,
        "Detroit, Michigan.
" *Gentlemen:*

"In *re* proposed issue of $135,000 refunding bonds of Bay county, Michigan, I have examined the inclosed record of proceedings and will approve of bonds on or after their respective dates of issue when the following additional papers are furnished and found satisfactory.

"I have examined the inclosed record of proceedings and will approve of bonds on and after their respective dates of issue when the following additional papers are furnished and found satisfactory: Certified statement as to whether or not the meeting of January 28th was an adjourned meeting or a regular meeting—I will read that again—*First*, certified statement as to whether or not the meeting of January 28th was an adjourned meeting or special meeting of the board. If an adjournment of a special meeting proofs should be furnished that original meeting was called in compliance with provisions of section 2483 of Compiled Laws of 1897. *Second*, certified statement as to total number of members-elect of the county board. This is to ascertain whether the bonding resolution received a sufficient number of votes. Section 2476, Compiled Laws of 1897. *Third*, proofs that the county clerk duly advertised for proposals for the purchase of said bonds in accordance with the provisions of the resolution adopted by the county board on January 29, 1903. *Fourth*, form of bond issue in making the issues in substantially the form herewithin inclosed.

"You will note that I have made several changes in the

bond form which you have submitted, the most important of which is to insert a recital as to the validity of the outstanding bonds to be refunded. *Fifth*, as a matter of wise business policy, not of strict legality, you will see to it that the outstanding bonds are canceled simultaneously with the delivery of the refunding bonds. *Sixth*, as a matter of abundant precaution, I prefer not to give my formal opinion on this issue until I am furnished with a copy of the act under which they are being issued, duly certified by the original certificate of the secretary of State. The copy of the act now furnished is only authenticated by the certificate of the county clerk.

"Yours very truly,<br>
"JOHN C. MATHEWS."

This communication was evidently brought to the attention of defendant, which caused a reply to be sent as follows:

"BAY CITY, March 7, 1903.

"FINN & DUCHARME,
    "Detroit, Michigan.
" *Gentlemen:*

"I have had the county clerk's office prepare the necessary certificates as required by you and am forwarding them by this mail and hope you will receive them in good time.   I called on Mr. Young, of the Bay City Bank, and he states he will be at the bank for Tuesday morning, 9 a. m.   He also stated that the check on the Detroit Savings Bank would be satisfactory in the payment of the bonds. I looked up where the $15,000 were payable on the 15th of March and find they are payable at the American Exchange National Bank, New York.   Will you please have them hold them until we can forward the necessary funds.

"Yours,<br>
"T. W. MOORE, Comptroller."

The attorney then wrote plaintiffs the following:

"March 13, 1903.

"FINN & DUCHARME, Bankers,
    "34 Buhl Block,
        "Detroit, Michigan.
" *Gentlemen:*

"In *re* proposed issue of $135,000 refunding bonds of Bay county, Michigan, I have additional papers furnished

pursuant to my letter of the 3d instant. I inclose herewith my formal opinion approving $60,000 stone road and $15,000 Twenty-Third street bridge refunding bonds, dated March 10, 1903. In accordance with the fifth paragraph of my letter of March 3d, I still advise as a matter of wise business policy that you see to it that the outstanding bonds are canceled simultaneously with the delivery of the new bonds. The $30,000 Third street bridge bonds to be dated October 1, 1903, I will approve on or after that date. It is my custom, however, never to issue a formal opinion bearing a date prior to the date of the bonds covered thereby.

"Yours very truly,
"JOHN MATHEWS."

Plaintiffs took and paid for the $75,000 of bonds dated March 10, 1903, but refused to accept the $60,000 of bonds dated October 1, 1903.

It appears that by the passage of Act No. 496 of the Local Acts of 1903, the legislature had attempted to segregate from Bay county the township of Gibson and add it to the county of Arenac. This act was approved May 27, 1903, and was declared unconstitutional in March, 1905. In the meantime plaintiffs claim that their attorney, Mr. Mathews, had refused to approve of the $60,000 of bonds to be issued October 1, 1903, as being legally issued; his alleged reason for his refusal being the passage of said local act.

It is the contention of plaintiffs that they were not obliged to take the bonds in question until they were approved by their bond attorney.

As to this proposition, we think it sufficient to call attention to the fact that the contract consisting of the proposal, the bid, and its acceptance was in writing. An examination of these papers discloses no ambiguity. They are sufficiently plain and definite, and nowhere in either of them is there a suggestion that plaintiffs' bid is a conditional one to become binding only after their attorney had approved the issue.

Mr. Finn, one of the plaintiffs, was permitted to testify as to the custom among bond buyers of requiring a cer-

tificate of an attorney of recognized standing as to the validity of the bonds.   We think the admission of this testimony erroneous.   Plaintiffs made their contract in writing and chose to so make it as to eliminate their right to insist upon having the favorable certificate of counsel as a condition precedent to their acceptance of the bonds.

The learned circuit judge, in holding with the plaintiffs upon this point, seems to have relied upon the case of *City of Great Falls* v. *Theis* (C. C.), 79 Fed. 943.   We have examined this case and are of opinion that it is not controlling of the issue here.   The contract there under consideration is not set out in the opinion, but the court says:

" In the contract it is provided that the city should furnish full information and copies of the record of all proceedings affecting the validity of the bonds, and that the buyers should give notice of their rejection of the bonds for illegality prior to a specified date, otherwise they should be deemed to have accepted them."

This is not a definite contract of sale and purchase such as appears in the case at bar; moreover, the court appears to have been convinced that the bonds there in question were illegally issued, though their legality had been established by a decision of the State court.   The opinion contains the following language:

"In view of these well-known facts, and in accordance with the usages of the county in such transactions, it is necessary, in order to give effect to the intentions of the parties, to read into the contract an implied condition that the buyers should not be bound to take the bonds, unless the proceedings of the city government had been conducted in substantial conformity with the laws, and proper records had been made, so that competent lawyers of good reputation would be able to certify to the validity of the bonds."

Even if this be taken as a correct statement of the law, it falls far short of saying that there must be read into the contract a provision that the purchaser need not accept the bonds unless they are approved by an attorney of

167 MICH.—12.

his own selection. Such a holding would result in allowing every bond purchaser to either accept or reject the bonds he had bought, at pleasure, for it would be easy to secure an adverse opinion upon any issue.

As we understand plaintiffs' position, they do not now claim that the refused bonds were illegally issued, but that the local act already referred to impaired the security and prevented Bay county on October 1, 1903, from giving to plaintiffs exactly the bonds contracted for.

This contention we think untenable. The county of Bay, at a time when Gibson township was a part thereof, duly authorized the issue, and it was not within the power of the legislature thereafter to pass any act which would relieve any portion of the territory affected by the proposed issue without making due provision for the same.

Plaintiffs concede that, if the bonds had been actually legally issued, the legislature could not pass a law which would invalidate the issue or impair the security, but contend that a different rule should be applied where the bonds are authorized but not issued. This distinction, we think, should not be made. Changes in the physical boundaries of municipal corporations are frequently made, and endless confusion would result if such a change should be permitted to invalidate proceedings duly and legally taken to authorize an issue of bonds covering the territory as it existed during the taking of those proceedings and prior to the change. 1 Abbott on Municipal Corporations, § 204.

In the case at bar the attempted legislation was abortive and was so held by the Supreme Court in March, 1905,[1] before the $60,000 of bonds were resold, so that plaintiffs could have carried out their contract with perfect safety had they so chosen. But, even if the legislation had been held constitutional, it would have afforded plaintiffs no reason for refusing to accept the bonds.

In that event, and in the absence of any clause in the

[1] *Bay County Supervisors* v. *Edmunds*, 139 Mich. 466.

act of segregation providing for the care of the proposed authorized issue, the township of Gibson would have remained liable, and plaintiffs' security would have been unchanged.

We are of opinion that defendant was entitled to a directed verdict in its favor for $136.74.

The judgment is reversed, and a new trial ordered.

BIRD, MOORE, McALVAY, and BLAIR, JJ., concurred.